UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KIMBERLY T. HALL                          CIVIL ACTION

VERSUS                                    NUMBER: 07-3030

MICHAEL J. ASTRUE,                        SECTION: "A"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based on disability.  (Rec. docs. 14, 17, 23).

Kimberly T. Hall, plaintiff herein, filed the subject applications for DIB and SSI benefits on February 9, 2004 alleging disability as of June 10, 2003. (Tr. pp. 44-46, 233-235).  In a

Disability Report completed by plaintiff on February 10, 2004, she identified diabetic neuropathy and a resulting inability to stand for long periods of time as the condition resulting in her inability to work. (Tr. pp. 48-57). Plaintiff's applications for DIB and SSI benefits were denied at the first step of the Commissioner's administrative review process on March 10, 2004. (Tr. pp. 25-28, 236-237). Pursuant to her request, a hearing <u>de novo</u> before an Administrative Law Judge ("ALJ") went forward on January 12, 2006 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. pp. 248-267). On June 20, 2006, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 12-22). The Appeals Council ("AC") subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 5-7). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In her cross-motion for summary judgment, plaintiff frames the issues for judicial review as follows:

1.   the ALJ substituted his medical opinion for that of the treating physician.

2.   the ALJ rejected the findings of the treating physician without first attempting to recontact him to resolve

2

perceived inconsistencies.

(Rec. doc. 14-3, p.1).

Relevant to the issues to be decided by the Court are the following findings made by the ALJ:

1.  [t]he claimant meets the nondisabilty requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through March 31, 2006.

2.  [t]he claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.  [t]he claimant's history of excision of left upper quadrant lipoma, left rotator cuff syndrome, [and] diabetes with possible neuropathy are considered "severe" based on the requirements in the Regulations 20 CFR §§404.1520(c) and 416.920(c).

4.  [t]hese medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.  [t]he undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  [t]he claimant has the following residual functional capacity. Claimant is able to perform work which involves lifting/carrying no more than 20 [pounds] occasionally and no more than 10 pounds frequently, walking/standing no more than 6 hours (with normal breaks) during an 8 hour workday, and sitting about 6 hours (with normal breaks) during an 8 hour workday.

7.  [t]he claimant's past relevant work as housekeeper-cleaner did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR §§404.1565 and 416.965).

8.  [t]he claimant's medically determinable history of excision of left upper quadrant lipoma, left rotator cuff

3

syndrome, diabetes with possible neuropathy do not prevent the claimant from performing her past relevant work.

9.   [t]he claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§404.1520(f) and 416.920(f)).

(Tr. pp. 21-22).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987).  If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.  42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420 (1971).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it

4

substitute its judgment for that of the Commissioner.  <u>Cook v.</u> <u>Heckler</u>, 750 F.2d 391, 392 (5th Cir. 1985).   Conflicts in the evidence are for the Commissioner to resolve, not the courts. <u>Patton v. Schweiker</u>, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that she is disabled within the meaning of the Social Security Act.  <u>Harrell v. Bowen</u>, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A).  Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled.  <u>Harrell</u>, 862 F.2d at 475.  In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

> 1.  an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
>
> 2.  an individual who does not have a "severe impairment" will not be found to be disabled.
>
> 3.  an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be

considered disabled without consideration of vocational factors.

4.  if an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.

5.  if an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that she is disabled and must ultimately demonstrate that she is unable to perform the work that she has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987).  In determining whether a claimant is capable of performing the work that she has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. Villa, 895 F.2d at 1022; Hollis v. Bowen, 837 F.2d 1378, 1386 (5th Cir. 1988); Epps v. Harris, 624 F.2d 1267, 1274 (5th Cir. 1980). A finding that the claimant is disabled or is not disabled at any point in the five-step review process is conclusive and terminates the Commissioner's analysis.  Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

At the time of the administrative hearing held on January 12, 2006, plaintiff was 45 years of age and had completed 12 years of

formal education followed by 1.5 years of college. She testified that she had not worked or looked for work since the alleged onset date of June 10, 2003 and that her most recent job prior to that was housekeeping which she had done for approximately one year. Plaintiff lived in a trailer with her boyfriend but had trouble going up and down the steps. She could drive but had no driver's license and could attend to her own personal needs. Plaintiff spent the better part of her day doing the necessary household chores and she read and painted for pleasure. She also accompanied her boyfriend to the store twice per week so he could purchase the necessary essentials.

Continuing, plaintiff testified that she stopped working because she could not stand on her feet for significant periods of time and was constantly sick. She also experienced problems manipulating and grasping objects and frequently dropped items that she was trying to hold. Plaintiff was right-handed but her left hand was the worse of the two. She could write, albeit slowly. Plaintiff estimated that she could walk one block and could stand for only twenty minutes. She further had trouble sitting because her back became sore. She could not bend, crawl, or stoop and had been restricted by her doctor from lifting anything in excess of 15 pounds. Plaintiff wore glasses for vision problems but still could not see clearly. (Tr. pp. 253-263).

Douglas Kuylen, a VE, was next to take the stand. He proceeded to classify plaintiff's past relevant work as a babysitter as medium, semi-skilled work; her job as a baker as medium, skilled work; her job as a housekeeper as light, unskilled work; and, her job as an assembler as medium, unskilled work. The ALJ then posed a hypothetical question to the VE which assumed an individual of plaintiff's age, education, and past work experience who was limited to light level work; who could occasionally lift and carry 20 pounds and could frequently carry 10 pounds; and, who could stand/walk/sit for 6 hours per hours per 8-hour workday with normal break periods. In answer thereto, the VE testified that the individual described in the hypo could perform plaintiff's past work as a housekeeper as it was light in nature. The VE acknowledged, however, that if plaintiff were limited to sedentary work she would be unable to perform any of her past jobs. In answer to the ALJ's question, the VE also testified that plaintiff would be unable to work if she could not satisfy the demands of a job 8 hours per day, 5 days per week. Plaintiff's attorney had no questions for the VE but he did close by arguing that plaintiff was indeed limited to sedentary work. (Tr. pp. 263-267).

The documentary evidence admitted in the administrative proceeding below begins with records from the Carson City Hospital ("CCH") dated June 4, 2003 where plaintiff was seen for complaints

8

of a cough and congestion and a lump under her ribs.  (Tr. pp. 162-168).   The diagnosis was bronchitis and antibiotics were prescribed.  (Tr. p. 166).  Plaintiff returned to CCH the following day with continued left lower quadrant abdominal pain.  (Tr. pp. 153-161).   X-rays taken at the time revealed a probable noncalcified granuloma at the lateral left chest but no evidence of obstruction.  (Tr. p. 137).  Plaintiff was advised to follow-up with a physician for possible hernia treatment; pain medication was administered.  (Tr. pp. 157-159).  In addition to abdominal pain, the diagnosis on this occasion included diabetes mellitus. (Id.).

On June 11, 2003, plaintiff was seen by Nurse Practitioner Patty Terry of the Carson Family Care Center ("CFCC") for follow-up of her abdominal pain and possible diabetes.  (Tr. pp. 122-127). The diagnosis was a mass in the left upper quadrant and new onset type II diabetes. Plaintiff was scheduled for an abdominal CT scan, was prescribed Glucophage, and was scheduled to attend instructional diabetes classes.  (Tr. pp. 126-127).  Computed tomography of the abdomen and pelvis conducted on June 17, 2003 revealed fatty infiltration of the liver. (Tr. p. 118). Plaintiff returned to CFCC on June 25, 2003 and was seen by Dr. Jason Hall. The dosage of her Glucophage was increased and she was instructed to walk 30 minutes per day, 5 days per week.  Plaintiff was also prescribed Cozar for new onset of hypertension and further testing

was contemplated to determine the cause for her abdominal discomfort. (Tr. pp. 112-115). An ultrasound of the gallbladder performed on June 30, 2003 was negative. (Tr. p. 135).

Plaintiff was seen again by Dr. Hall on July 9, 2003. Her primary concern at the time was left upper quadrant discomfort but she did complain of "burning" foot pain as well. She was experiencing difficulty in adhering to her exercise regimen primarily secondary to the heat of the summertime. An examination of the feet revealed the dorsalis pedis to be 2/4 bilaterally but plaintiff had a full range of motion. The assessment was Type II diabetes, a left upper quadrant mass, and foot pain despite an essentially normal exam. Diabetic neuropathy was not suspected at the time and plaintiff was prescribed Vioxx. (Tr. pp. 110-111). Plaintiff was instructed on diabetes-related dietary restrictions on July 16, 2003. (Tr. pp. 96, 109).

Pursuant to a referral from Dr. Hall, plaintiff was evaluated by a surgeon, Dr. Thomas Morgan, on July 18, 2003. It was suspected that plaintiff was suffering from a hernia or a lipoma and exploratory surgery was recommended. (Tr. pp. 106-107, 139-142). X-rays of the feet taken on July 23, 2003 were normal. (Tr. p. 134). Plaintiff returned to CFCC on August 5, 2003 to have her foot pain re-checked with the primary area of discomfort being the heels. Upon physical examination, plaintiff's extremities were

10

symmetrical with some decreased sensation of the toes and tenderness to palpation of the metatarsophalangeal joints bilaterally.  The diagnosis was Type II diabetes, uncontrolled; diabetic neuropathy; and, a mass in the left abdomen.  The dosage of Glucophage was increased and plaintiff was placed on a trial of Neurontin as well. Plaintiff was also to consult with a podiatrist regarding orthotic shoe inserts.  (Tr. pp. 90, 98).

On August 11, 2003, plaintiff underwent an excision of a lipoma from the left upper quadrant at the hands of Dr. Morgan. The excised material was found to be benign by the pathologist. (Tr. pp. 132-133, 146).  Plaintiff presented herself at the emergency room two days later for problems associated with her drainage tube.  (Tr. pp. 147-152).  On August 15, 2003, plaintiff was seen by Dr. Morgan for post-op follow-up care and was said to be doing "pretty well".  (Tr. p. 95).  However, when she was next seen on August 21, 2003, plaintiff had developed an infection at the surgical site and was thus maintained on Keflex.  (Tr. p. 94).

On August 29, 2003, plaintiff was seen by Dr. William Vondette of the Foot Clinic of Carson City for complaints of foot pain under the big toes and in the balls of the feet as well as a burning sensation.  The diagnosis was diabetes mellitus, neuropathy of digits 2 to 5 bilaterally, and hammertoes of digits 2 to 5 bilaterally.  A teeter was prescribed. (Tr. p. 87).  When plaintiff

returned to Dr. Morgan on September 2, 2003 her surgical incision was noted to be healing properly. (Tr. p. 93). Plaintiff was next seen by Nurse Practitioner Terry of CFCC on September 4, 2003 for further follow-up care and a refill on her medications. Plaintiff reported great relief when taking her prescribed Neurontin and Nexium but her insurance company had refused to pay for the medications. Glucophage was also very effective. Plaintiff had good sensation in the lower extremities but she did complain of bilateral foot pain. The assessment was noninsulin-dependent diabetes; hypertension; status post abdominal surgery; and, diabetic neuropathy. Plaintiff was given samples of Neurontin and the doctor's office was to negotiate with plaintiff's insurance company in an attempt to get her other medications covered. (Tr. p. 92).

On September 24, 2003, plaintiff was seen by Dr. Hall for treatment of sinusitis and yeast dermatitis. (Tr. pp. 85-86) Plaintiff returned to Dr. Hall the following day "... with paperwork regarding disability." It was noted that plaintiff had been prescribed orthotics when she had been seen by the podiatrist but she was unable to afford the inserts. It was suggested that plaintiff try over-the-counter orthotics if she could find no other means to afford the prescribed inserts. (Tr. pp. 83-84). Bloodwork was done on October 6, 2003 and plaintiff was

administered a flu shot.  (Tr. pp. 81-82, 171-172).

On February 10, 2004, plaintiff completed a Disability Report form designed to elicit information pertinent to her applications for Social Security benefits.[1]/  In the form, plaintiff report that she could no longer be on her feet more than 15 to 20 minutes at a time and that she had thus begun babysitting 40 hours per week to generate needed income.  (Tr. pp. 48-57).  Plaintiff subsequently completed an Activities of Daily Living form on February 26, 2004 in which she reported that her typical routine included watching her grandchildren several days per week and making dinner for her boyfriend.  Plaintiff was still capable of driving, grocery shopping, cooking and doing all the housework and yardwork although it took her longer than it used to.  However, standing, squatting, kneeling, and climbing stairs were effected and plaintiff could not be on her feet for more than 20 minutes at a time.  (Tr. pp. 65-72).

On March 10, 2004, an Administration medical consultant reviewed the medical records then extant and only partially credited plaintiff's complaint of significant limitations on standing and walking because her reported activities of daily

---

[1]/ Reports such as these may properly be considered by the ALJ in determining plaintiff's disability status.  Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995); Villa, 895 F.2d at 1022-23.

13

living were not so severely restricted.   The consultant further indicated that, although plaintiff was not capable of performing substantial gainful activity at the time, such inability was not expected to last 12 consecutive months.   (Tr. pp. 182-191).

The next medical records admitted in the administrative proceedings below were not generated until October 29, 2004 and document plaintiff's evaluation at Ochsner Hospital by Dr. Hung Nguyen.  Plaintiff had been out of her prescription medication for over 6 months and her blood pressure was fairly elevated. Plaintiff had no sensation in the balls of her feet and she was unable to drive due to burning pain.   The diagnosis was diabetes and hypertension and various medications were prescribed.  (Tr. pp. 214-215).  By November 5, 2004, plaintiff's diabetes was better controlled with medication but her hypertension remained uncontrolled. Plaintiff complained that her feet burned all the time and that pain was elicited just from walking short distances. (Tr. pp. 212-213).   Bloodwork and other testing was done on November 8, 2004. (Tr. pp. 225-232).   Plaintiff then underwent a cardiological consultation at Ochsner on November 9, 2004.  An EKG had apparently been done in the interim which produced abnormal results.  (Tr. pp. 210-211).  Plaintiff returned to Dr. Nguyen on December 6, 2004 for further follow-up evaluation.  She reported that exercising was difficult due to burning pain in her feet.  The

14

assessment was Type II diabetes, stable hypertension, GERD, and hyperlipidemia.   Various referrals were made and plaintiff was given some Neurontin samples.  (Tr. pp. 208-210).

On January 20, 2005, a second Disability Report was generated in connection with plaintiff's pending applications for Social Security benefits.  Answers to questions appearing on the form were somewhat inconsistent – while plaintiff indicated that she had been unable to work since June of 2003, the answer to a subsequent question was to the effect that plaintiff was working at the time. (Tr. pp. 58-64).  Plaintiff was then seen again by Dr. Nguyen on February 17, 2005 for complaints of vomiting and sore feet.  She also reported that the previously-prescribed Neurontin, while initially helpful, was no longer effective in controlling her foot pain.  Plaintiff was prescribed Phenergan, Cymbalta, and Lisinopril and was advised to return if her condition did not improve within 1 week.  (Tr. pp. 206-207).  Bloodwork and other testing was done on February 18, 2005.  (Tr. pp. 221-224).  X-rays of the chest and abdomen taken on March 6, 2005 were normal.  (Tr. pp. 204-205). Additional testing was done on that date as well.  (Tr. pp. 216-220).  On March 11, 2005, plaintiff returned to Dr. Nguyen for follow-up care after apparently being admitted to the hospital for chest pain.  She was feeling better that day but was still experiencing pain in the toes and balls of both feet and she also

had a toothache.  Medications were dispensed. (Tr. pp. 202-203).

On May 4, 2005, Dr. Nguyen completed a pre-printed "[t]o whom it may concern" form which had apparently been supplied to him by plaintiff's counsel.  That form elicited "yes" or "no" answers to various questions regarding plaintiff's capabilities.  There, Dr. Nguyen checked off blanks on the form indicating that plaintiff suffered from neuropathy demonstrated by significant persistent disorganization of motor function in 2 extremities and resulting in sustained disturbance of gross and dexterous movements and gait and station.  The doctor also indicated, <u>inter alia</u>, that plaintiff's vision was so significantly impaired that she could not work full-time at a job requiring significant reading, that she had "... virtually no control over her bladder", that she could not stand or walk for 6 hours per 8-hour workday, and that she could not sit for 6 hours in an 8-hour day.  (Tr. pp. 180-181).  Plaintiff was next seen by Dr. John Glotfelty of the Ochsner Family Practice in Slidell on June 29, 2005 for symptoms of acute bronchitis and was dispensed a Ketek-Pak.  (Tr. p. 201).  Plaintiff still had a cough and related symptoms when she was next seen by Dr. Nguyen on August 17, 2005.  The assessment was bronchitis, diabetes, and GERD and plaintiff was prescribed medication including a Z-pak, a Medrol-dosepak, and Mucinex DM.  (Tr. pp. 199-200).

Plaintiff's next visit with Dr. Nguyen took place on November

16

9, 2005.  At that time, plaintiff complained of bilateral foot pain for the previous month with burning pain from the balls of the feet to the toes but no tenderness.  The pain was reportedly similar to the neuropathic pain plaintiff had experienced previously but was more intense.  Plaintiff had exhausted her supply of Cymbalta several weeks earlier and could no longer afford it.  She also complained of recent arm pain.  On examination, plaintiff had decreased sensation in the toes.  The diagnosis was rotator cuff syndrome/acromial bursitis and diabetic neuropathy.  Plaintiff was continued on Naproxen for shoulder pain and was scheduled for additional testing.  (Tr. pp. 197-198).

The final treatment note appearing in the record documents plaintiff's return visit with Dr. Nguyen on January 10, 2006, just 2 days before the administrative hearing described earlier.  At that time, plaintiff complained of left leg pain of 1 week's duration which had begun in the lower abdomen but then migrated down to the thigh and into the calf.  The pain was described as constant and crampy like a "charley horse".  On physical examination, plaintiff had no erythema or edema in the left leg but the calf was tender to palpation with tight muscles and some tenderness in the thigh.  Range of motion of the left knee and hip were essentially normal except for pain in the leg muscles.  The assessment was leg pain, probably cramps, and rule out DVT.  An

17

ultrasound of the left leg was negative and plaintiff was prescribed Flexeril for pain relief. (Tr. pp. 193-196).

As noted earlier, plaintiff challenges the Commissioner's decision to deny Social Security benefits on 2 grounds. First, plaintiff alleges that the ALJ improperly substituted his own medical opinion for that of 1 of her treating physicians, Dr. Nguyen, as set forth in the "TO WHOM IT MAY CONCERN" form that the doctor executed on May 4, 2005. In her second challenge to the Commissioner's decision plaintiff relatedly argues that the ALJ rejected the May 4, 2005 opinions of Dr. Nguyen without first attempting to recontact the doctor in an attempt to resolve the perceived inconsistencies as required by 20 C.F.R. §§404.1512(e)(1) and 416.912(e)(1)

In addressing plaintiff's challenges, the Court recalls that the responsibility of weighing the evidence and determining the credibility of witnesses' testimony and doctors' opinions lies with the ALJ in the first instance. Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991); Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991); Wren v. Sullivan, 925 F.2d 123, 129 (5th Cir. 1991); Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir. 1990). In addition, the law is clear that the burden is upon the plaintiff to produce objective medical evidence of a condition that could reasonably be expected to produce the level of pain or other symptoms complained

18

of.  Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990); Harper

v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989).  The ALJ must then

weigh the plaintiff's testimony and subjective complaints against

the objective medical evidence that has been produced.  Chaparro v.

Bowen, 815 F.2d 1008, 1010 (5th Cir. 1987)(citing Jones, 702 F.2d

at 621 n.4).  The evaluation of a plaintiff's subjective symptoms

is a task particularly within the province of the ALJ for it was

the ALJ who had an opportunity to observe the plaintiff, not the

Court.  Harrell, 862 F.2d at 480.  The ALJ may discredit a

plaintiff's subjective complaints of pain and other limitations if

he carefully weighs the objective medical evidence and articulates

his reasons for doing so.  Anderson v. Sullivan, 887 F.2d 630, 633

(5th Cir. 1989)(citing Abshire v. Bowen, 848 F.2d 638, 642 (5th Cir.

1988)).

The law is equally clear that the ALJ has the sole

responsibility for determining a claimant's disability status and

is free to reject the opinion of any physician when the evidence

supports a contrary conclusion.  Newton v. Apfel, 209 F.3d 448, 455

(5th Cir. 2000)(quoting Paul v. Shalala, 29 F.3d 208, 211 (5th Cir.

1994), overruled in part on other grounds by Sims v. Apfel, 530

U.S. 103, 120 S.Ct. 2080 (2000)).  A treating physician's opinions

are not conclusive and may be assigned little or no weight when

good cause  is shown.  Newton, 209 F.3d at 456 (citing Brown v.

<u>Apfel</u>, 192 F.3d 492, 500 (5th Cir. 1999) and <u>Greenspan v. Shalala</u>, 38 F.3d 232, 237 (5th Cir. 1994), <u>cert</u>. <u>denied</u>, 514 U.S. 1120, 115 S.Ct. 1984 (1995)).   Good cause exists when the treating physician's opinions are so brief and conclusory that they lack persuasive weight, when they are not supported by medically acceptable techniques, or when the evidence supports a different conclusion.  <u>Newton</u>, 209 F.3d at 456; <u>Martinez v. Chater</u>, 64 F.3d 172, 176 (5th Cir. 1995); <u>Bradley v. Bowen</u>, 809 F.2d 1054, 1057 (5th Cir. 1987); <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985). The Regulations require the ALJ to perform a detailed analysis of a treating physician's view under the criteria set forth in 20 C.F.R. §§404.1527(d) and 416.927(d) <u>only</u> in the absence of controverting medical evidence from other treating and/or examining physicians.  <u>Newton</u>, 209 F.3d at 453.

Plaintiff argues that the ALJ, by finding that she could walk/stand up to 6 hours per 8-hour workday, improperly substituted his medical opinion for that of Dr. Nguyen who had indicated on May 4, 2005 that plaintiff has no such capability.  As noted by the ALJ in his written decision, the "TO WHOM IT MAY CONCERN" form completed by the doctor on May 4, 2005 contained no contemporaneously-recorded, medically acceptable findings supporting the doctor's opinion.  The findings set forth on the form, therefore, are entitled to little weight.  <u>Warncke v. Harris</u>,

20

619 F.2d 412, 417 (5th Cir. 1980).  The ALJ's assessment of the opinions set forth in the form is understandable; Dr. Nguyen checked off other boxes on the form indicating that plaintiff's vision was so impaired that she could not work full-time at a job requiring significant reading and that she had virtually no control over her bladder.  Yet none of the medical records admitted in the administrative proceedings document any complaints or treatment for vision problems or incontinence.  As respects her vision, plaintiff testified that she read and painted for pleasure and that she was capable of driving even though she did not hold a valid driver's license.  Plaintiff additionally testified that she was capable of attending to her own personal hygiene and grooming needs, that she went to the grocery and the bank weekly, and that she performed all of the needed household maintenance, specifically stating that there were no chores that she was incapable of performing.  (Tr. p. 258).  And contrary to her testimony that she had not worked or looked for work since the alleged onset date of June 10, 2003, in the Disability Report that she completed on February 10, 2004, plaintiff represented at that time working 8 hours per day, 5 days per week as a babysitter.  (Tr. pp. 49-50).  In the second Disability Report that was completed on February 10, 2005, plaintiff indicated that the babysitting job required her to walk/stand for 1 hour per day which was within the limitations set

forth in Dr. Nguyen's May 4, 2005 letter even if those opinions are credited.  (Tr. p. 60).

More importantly, however, the ALJ's finding regarding plaintiff's walking/standing capability was not a medical opinion at all but was simply an assessment of her residual functional capacity.  See Joseph-Jack v. Barnhart, 80 Fed.Appx. 317, 318 (5th Cir. 2003)(citing 20 C.F.R. §§416.946, 416.927(c)); 20 C.F.R. §§404.1546, 404.1527(e).  As is done in every Social Security case, it was the ALJ's duty and responsibility to make that assessment. Id.

Plaintiff secondly argues that, to the extent that the ALJ rejected Dr. Nguyen's May 4, 2005 opinions as being unsupported by the other evidence of record, the ALJ had a duty to recontact the doctor to resolve any inconsistencies as required by 20 C.F.R. §§404.1512(e)(1) and 416.912(e)(1).

In Newton, 209 F.3d at 453, the Fifth Circuit stated that "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. §404.1512(c)."  (Emphasis added).  As noted earlier, because the record in the present case contains other medical

22

opinion evidence based on personal examination and treatment of plaintiff in the form of the treatment notes of Doctors Hall, Morgan, Vondette and Glotfelty, <u>Newton</u> does not require that the ALJ recontact Dr. Nguyen.  <u>Williams v. Astrue</u>, 2008 WL 2397702 at *10 (E.D. La. 2008).  Nor has plaintiff demonstrated what additional information would have been produced had Dr. Nguyen been recontacted and how it might have led to a different decision.  <u>Id</u>.; <u>Ripley v. Chater</u>, 67 F.3d 552, 557 n. 22 (5th Cir. 1995).  The ALJ properly weighed the documentary evidence and testimony before him before reaching the decision that he did.

<u>**RECOMMENDATION**</u>

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment is granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

23

New Orleans, Louisiana, this <u>  8th </u> day of <u>      September      </u>, 2008.

<u>                                    </u>
UNITED STATES MAGISTRATE JUDGE